**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE GRANT VAN HOOK,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>A. P. KANE, Warden,<br><br>　　　　Respondent.<br>_____/ | No. C 05-2345 PJH (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION TO DISMISS** |

This is a habeas case filed pro se by a state prisoner. Petitioner alleges that his rights were violated when the Board of Prison Terms ("BPT")[1] found him not suitable for parole at a hearing in 2004.

Respondent has moved to dismiss the action. The time to oppose the motion has expired and petitioner has not filed an opposition, so the motion is ready for decision.

**DISCUSSION**

In the petition, petitioner contended that: (1) His due process rights were violated in the denial of parole; (2) the BPT violated the Americans with Disabilities Act in relying on his perceived status as a drug abuser to deny parole; and (3) his due process rights were violated by the makeup of the board. Respondents contend that the petition should be dismissed because (1) the court lacks subject matter jurisdiction, because petitioner has no liberty interest in parole and therefore no federal due process rights in connection with parole decisions; (2) the ADA claim is not exhausted; and (3) his claim regarding the makeup of the board presents only a state law issue.

///

---

[1] It is now called the "Board of Parole Hearings."

*1.    Liberty interest*

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole).  In such a case, a prisoner has liberty interest in parole that cannot be denied without adequate procedural due process protections.  *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on parole.  In California, the panel or board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."  Cal. Penal Code § 3041(b).  Under the clearly established framework of *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  The scheme presumes that parole release will be granted unless the statutorily defined determinations (that considerations of public safety forbid it) are made*.  Id.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest).  In sum, the structure of California's parole

2

scheme -- with its mandatory language and substantive predicates – gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings.

Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct. 92 (2005), as authority for his contention that the California statute does not create a liberty interest in parole. This reliance is misplaced because *Dannenberg* deals with subsection (a) of the parole statute, whereas the Ninth Circuit decisions finding that there is a liberty interest in parole in California rely on subsection (b). Sections 3041(a) and 3041(b) of the California parole statute serve different purposes: subsection (a) provides when the parole authorities must meet with the inmate, that they should "normally" set a parole date, and that the parole dates should be calculated to provide uniform terms. Subsection (b) provides that the board shall set a release date unless considerations of public safety forbid it. *Dannenberg* determined that a prisoner's individual parole suitability must be determined *before* the BPT attempts to set a term that would result in uniform parole dates for similar crimes – in other words, subsection (a)'s term uniformity requirement is only mandatory after the inmate has been found suitable under subsection (b). *See id.* at 1069-70. *Dannenberg* does not answer the question of whether subsection (b) creates a liberty interest in the parole suitability determination. Indeed, some language in *Dannenberg* seems to recognize such a liberty interest. *See id.* at 1095 n.16.

Given that *Dannenberg* did not address whether a liberty interest is created by subsection (b), and the Ninth Circuit has held in *McQuillion* that it does, respondent's argument is without merit. This court has subject matter jurisdiction under 28 U.S.C. § 2254 to decide whether petitioner's Fourteenth Amendment right to due process was violated by the BPT's determination that he was not suitable for parole.

*2.    ADA claim*

The second of petitioner's claims, his claim that the board violated his rights under the ADA by denying parole in part because it perceived him to be a drug abuser, was not stated as a separate issue in the petition. The other two grounds are clearly delineated as

3

Ground 1 and Ground 2 in capital letters and clearly state the issues presented. The ADA claim, however, is included in the discussion of the first issue. The court, in performance of its obligation to liberally construe pro se filings, treated this as a separate issue because it seemed distinct from the due process issue. It may be that petitioner did not intend this to be a separate issue, particularly given that it would seem not to present any basis for habeas relief. For this reason, and because the court below concludes that this issue is unexhausted, petitioner will be afforded an opportunity to amend to delete this issue.

An application for a federal writ of habeas corpus filed by a prisoner who is in state custody pursuant to a judgment of a state court may not be granted unless the prisoner has first exhausted state judicial remedies, either by way of a direct appeal or in collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every issue he or she seeks to raise in federal court. *See* 28 U.S.C. § 2254(b),(c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987). Federal courts must dismiss a habeas petition which contains one or more unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). When a district court discovers an unexhausted claim it is not free to simply ignore that claim; *Rose v. Lundy* requires dismissal of the entire habeas petition without reaching the merits of any of its claims if the petition combines exhausted and unexhausted claims. *Guizar v. Estelle*, 843 F.2d 371, 372 (9th Cir. 1988). The dismissal must be with leave to amend to delete the unexhausted claims; if they are deleted, the court can then consider those which remain. *See Anthony v. Cambra*, 236 F.3d 568, 574 (9th Cir. 2000). Alternatively, the district court has the power to stay the petition while petitioner exhausts in state court. *Rhines v. Webber*, 544 U.S. 269, 277-78 (2005).

Respondent's materials establish that the ADA claim is not exhausted. Petitioner will be allowed to choose among the alternatives mentioned above.

*3.    Composition of the board*

The outcome of the motion to dismiss this issue is heavily dependent on how it is characterized. In his petition, petitioner contends that the board members were not a

4

"cross section" of the community, as required by Section 5075 of the California Penal Code. Section 5075 requires that board members be a "cross section of the racial, sexual, economic, and geographic features of the population of the state." Petitioner contends that instead the board was made up of members with a law-enforcement background, except for one victims' rights advocate. The complication is that he also contends, in what otherwise is an issue largely about Section 5075 and the cross-section requirement, that the board members were biased, as shown by their denying parole in ninety-nine percent of the cases that come before them. As the court reads the issue, petitioner contends that both these things -- failure to comply with Section 5075 and bias -- violate federal due process.

Respondent contends that this issue should be dismissed because it does not present a federal question. It is true that petitioner's contention that Section 5075 was violated is purely a state law claim. Even as a state claim, it seems to be without merit, as the statute does not require pro-prisoner members, and he does not contend that the board does not reflect the "racial, sexual, economic, and geographic features of the population of the state." A board could consist entirely of retired law enforcement officers and still do that.

In any case, whether or not Section 5075 was violated is irrelevant. What matters is whether petitioner has alleged a violation of the constitution, and petitioner's contention that the denial rate shows that the board is not an unbiased decision-maker is sufficient to allege a due process violation. *See O'Bremski v. Maas*, 915 F.2d 418, 422 (9th Cir. 1990).

In an alternative argument, respondent contends that if the court concludes that petitioner has stated a federal claim, it still should be dismissed. First, he asserts that there is no liberty interest in parole, so no due process rights. This claim is rejected in the discussion of petitioner's first ground above. Secondly, he asserts that Section 5075 does not create a liberty interest entitled to procedural due process protections. Although this is probably true, it does not negate the fact that petitioner has a liberty interest in parole, and that among the due process protections for that liberty interest is the right to an unbiased

5

decision-maker. Thirdly, respondent contends that this claim is moot because most of the commissioners have changed since the 2004 hearing at issue. To the extent that petitioner's claim is that the commissioners did not meet the Section 5075 requirement that they be a cross-section of the community, this may be correct; but the court has already concluded above that any such claim is without merit. However, a change in the makeup of the board would not moot petitioner's contention that the particular board which denied him parole was biased. Finally, respondent again focuses on the Section 5075 claim in contending that the claim is vague and conclusory. That is not the case, however, with the bias claim.

The motion to dismiss will be granted to the extent petitioner contends that the alleged failure to comply with Section 5075 violated due process. It will be denied as to petitioner's contention that the board was biased.

## CONCLUSION

1.  Respondent's motion to dismiss (document 4 on the docket) is denied in part and granted in part. It is **DENIED** as to respondent's contention that petitioner has no liberty interest in parole and as to petitioner's contention that the board was biased. It is **GRANTED** as to petitioner's contention that the alleged violation of Section 5075 violated due process, and as to respondent's contention that the petition is mixed because the ADA claim is not exhausted.

2.  Because the petition is mixed, that is, contains both exhausted issues and an unexhausted one, petitioner must choose one of the following: (1) He may file an amended petition omitting the unexhausted issue; (2) he may ask the court to stay proceedings while he returns to state court to exhaust the unexhausted issue; or (3) he may dismiss the entire case with an eye to exhausting the unexhausted issue and then filing a new federal petition (this choice has serious risks, discussed in the footnote).[2] He

---

[2] Options (1) and (3) -- amending to delete the unexhausted issues and proceeding with those which are exhausted, or voluntarily dismissal -- have disadvantages. If petitioner chooses to delete the unexhausted issue and proceed now with those which are exhausted (option number one), a subsequent petition directed to the same conviction might be barred

must do one of these three things within thirty days of the date this order is entered. If he does not, this case will be dismissed.

**IT IS SO ORDERED.**

Dated: August 29, 2006.

                                   PHYLLIS J. HAMILTON
                                   United States District Judge

G:\PRO-SE\PJH\HC.05\VANHOOK345.MDSMSS

---

as second or successive or abusive. See 28 U.S.C. § 28 U.S.C. 2244(b)(1); *Lundy*, 455 U.S. at 521. He also would have to obtain permission from the Ninth Circuit Court of Appeals to file such a second petition. See 28 U.S.C. § 2244(b)(3)(A). If he chooses to dismiss this case and return later with a completely exhausted petition (option number three), that petition would not be second or successive, *see Slack v. McDaniel*, 120 S. Ct. 1595, 1604-05 (2000); *Anthony v. Cambra*, 236 F.3d 568, 572 (9th Cir. 2000), but it probably would be barred by the one-year statute of limitations contained in 28 U.S.C. § 2244(d)(1). Under the Antiterrorism and Effective Death Penalty Act of 1996, petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the *latest* of the date on which: (1) the judgment became final after the conclusion of direct review or expiration of the time for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the United States Supreme Court, if the right was newly recognized and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). Time during which a properly filed application for collateral review (such as a state habeas petition) is pending is excluded from the one-year time limit. *Id.* § 2244(d)(2). Depending on when direct review was completed; possible application of another starting date for the statute of limitations; when any applications for collateral review, such as state habeas petitions, were filed; and when a new federal petition is filed, a new petition might be barred. The time a federal petition, such as this one, is pending is *not* excluded from the one-year limit. *Duncan v. Walker*, 121 S. Ct. 2120, 2129 (2001).