UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LANCE GRANT VAN HOOK,

          Petitioner,

  vs.

A. P. KANE, Warden,

          Respondent.
                                       /

No. C 05-2345 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support thereof, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

A jury in Los Angeles County Superior Court found petitioner guilty of second degree murder under Cal. Penal Code § 187 and use of a firearm in the commission of the offense under Cal. Penal Code § 12022.5. In 1989 petitioner received a sentence of fifteen years to life in prison, plus a two-year enhancement pursuant to § 12022.5. On July 7, 2004, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented by counsel and was given an opportunity to be heard, the Board found petitioner unsuitable for parole. Resp't Ex. 2 at 83. The Board based its decision on the callousness of the crime, the triviality of the motive in relation to the offense, the multiple victims involved in the incident, the prisoner's history of unstable relationships with others

as a result of his early and heavy addiction to methamphetamine, his misconduct while incarcerated, his failure to develop a marketable skill, his insufficient participation in drug therapy programs, his inconclusive psychological report, and opposition from the district attorney and the police department.

**DISCUSSION**

**I.   Standard of Review**

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

2

established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## II.  Issues Presented

Petitioner claims that his due process rights were violated because: (1) the Board's decision was not supported by "some evidence"; (2) the Board improperly relied on the circumstances of his offense in denying him parole; (3) the Board failed to set a fixed date for release pursuant to the principle of "uniform terms"; and (4) the Board was biased.

Respondent contends that California prisoners have no liberty interest in parole and that, if they do, the only due process protections available to them are a right to be heard and a right to be informed of the basis for the denial of parole.  In other words, respondent contends that there is no due process right to have the parole decision supported by sufficient evidence.  Because respondent's contentions go to whether petitioner has any due process rights at all in connection with parole and, if he does, what those rights are, they will addressed first.

### A.  Respondent's Contentions

#### 1.  Liberty Interest

Respondent contends that California law does not create a liberty interest in parole.  This argument is without merit.

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  While there is "no constitutional or inherent right of a convicted person to be conditionally released

3

before the expiration of a valid sentence," *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses "mandatory language," may create a presumption that parole will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987).  For parole decisions, this "mandatory language" analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995).  *See Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 n.3 (9th Cir. 2006).

California's parole statute provides that the parole board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).  The Ninth Circuit has held that "[u]nder the 'clearly established' framework of *Greenholtz* and *Allen*, . . . California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*, 306 F.3d at 902*; see also Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007); *Sass*, 461 F.3d at 1127-28; *Biggs*, 334 F.3d at 914-15.

Respondent relies on the California Supreme Court case *In re Dannenberg*, 34 Cal. 4th 1061, 1087-88 (2005), in support of his contention that the California statute does not create a liberty interest.  The Ninth Circuit considered and rejected this argument in *Sass*, 461 F.3d at 1127-28, but respondent wanted to preserve the argument because at the time the answer was filed, a petition for rehearing en banc was pending in *Sass.*  That petition has now been denied, establishing that the argument is without merit.  *See Sass*, case no. 05-16455 (order Feb. 13, 2007).[1]

---

[1] After the Answer was filed, in *Hayward v. Marshall*, 512 F.3d 536, 542 (9th Cir. 2008), the Ninth Circuit affirmed that there is a liberty interest in parole in California and that parole board decisions must be supported by "some evidence."  That decision has been vacated and is now under submission en banc.  *Hayward v. Marshall*, No. 06-55392, 2008 U.S. App. LEXIS 10538 (9th Cir. May 16, 2008).

4

In sum, the mandatory language of California's parole scheme gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings. Respondent's argument to the contrary is without merit.

### 2. Due Process Protections

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled under clearly established Supreme Court authority are limited to an opportunity to be heard and a decision explaining the reasons for parole denial. That is, respondent contends that there is no due process right to have the parole board's decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has "clearly established" that a state parole board's suitability decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record" or is "otherwise arbitrary." *Irons*, 505 F.3d at 851 (applying "some evidence" standard used for disciplinary hearings in *Superintendent v. Hill*, 472 U.S. 445-455 (1985), to the parole rescission context); *Sass*, 461 F.3d at 1128-29 (same). Respondent's argument challenging the "some evidence" standard is without merit.

### B. Petitioner's Claims

#### 1. "Some Evidence"

Petitioner contends that his due process rights were violated because the Board's decision denying him parole was not supported by "some evidence."

As discussed in the previous section, the Supreme Court has "clearly established that a parole board's decision deprives a prisoner of due process . . . if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'" *Irons*, 505 F.3d at 851 (citations omitted). Ascertaining whether the "some evidence" standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-56). The

5

some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

When a federal habeas court assesses whether a state parole board's suitability determination was supported by "some evidence," the state's statutes and regulations governing parole suitability determinations control the analysis. *Irons*, 505 F.3d at 851. Accordingly, here the court first looks to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole; then, it reviews the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" constituted an unreasonable application of the "some evidence" principle. *See id.*

Under California law, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a); *see also Dannenberg*, 34 Cal. 4th at 1080. The Board must determine whether a prisoner is presently too dangerous for release based on the "circumstances tending to show unsuitability" and "circumstances tending to show suitability" set forth in Cal. Code Regs. tit. 15, § 2402(c)-(d). *Irons*, 505 F.3d at 851. The unsuitability factors include an especially heinous commitment offense, a previous record of violence, a history of unstable social relationships, a lengthy history of severe mental problems related to the offense, and serious misconduct in prison. Cal. Code Regs. tit. 15, § 2402(c). The suitability factors include absence of a juvenile record, stable social relationships, demonstration of remorse, lack of violent criminal history, realistic parole plans, and institutional activities indicating an enhanced ability to function within the law upon release. Cal. Code Regs. tit. 15 § 2402(d).

In the present case, the California Superior Court and the California Court of Appeal held that the record contains "some evidence" to support the Board's determination that petitioner was unsuitable for parole. Resp't Ex. 10 at Ex. B; Resp't Ex. 9. Because the court of appeal's one-page decision did not explain what that "some evidence" was, this

court looks to the reasoning of the superior court. *See Ylst*, 501 U.S. at 801-06. The superior court rejected the Board's finding that multiple victims were attacked, injured, or killed, that the offense involved human suffering, and that petitioner must upgrade vocationally in order to be suitable for release; however, it concluded that there was "some evidence" to support the factors of trivial motive, unstable social history, escalating pattern of criminal conduct, insufficient substance abuse programming, misconduct while incarcerated, and negative psychological evaluation. Resp't Ex. 10 at Ex. B.

The record indicates that the state courts' decisions upholding the denial of parole did not constitute an unreasonable application of *Hill's* "some evidence" principle. *See Irons*, 505 F.3d at 851. First, "some evidence" supported the Board's finding that the motive was trivial in relation to the offense. *See* Resp't Ex. 2 at 84. The initial dispute between petitioner and the victim was over items of personal property, specifically, a stereo belonging to petitioner's co-defendant that the victim had taken and sold for drugs, and a leather jacket belonging to the victim that either petitioner or his co-defendant refused to return. *Id.* at 14-18. After an argument over these items, the victim returned to his car. *Id.* at 16-17. Petitioner followed the victim and shot at the car over a six-foot wall. *Id.* at 16-19. The victim died from two gunshot wounds in the chest area. *Id.* at 16. Even if petitioner's version of the events is true and he shot in response to seeing three armed passengers get out of the car, *see id.* at 17, the dispute over the personal property was a weak motive for petitioner to follow the victim outside with a gun in the first place and to shoot from his position of safety behind a six-foot wall. Thus, the Board's finding that the motive was trivial in relation to the offense was supported by "some evidence."

"Some evidence" also supports the Board's finding that petitioner's participation in substance abuse programs while in prison had been insufficient. Petitioner became addicted to drugs at around the age of thirteen, *id.* at 31; at the time of his offense, he was using methamphetamine "all the time." *Id.* at 26. Petitioner acknowledged that his pre-incarceration "drug lifestyle" "interrupt[ed his] relationships with [his] family and other loved ones." *Id.* at 27. Despite this history of drug abuse, petitioner was not active in AA or NA

at the time of the Board hearing. *Id.* at 42. He said he stopped participating in December 2002 because he knew that his liver condition made it extremely dangerous to do drugs or alcohol, and because the waiting lists for these programs were too long. *Id.* at 42, 90. As the Board noted, however, even people with serious physical problems continue to use drugs. *Id.* at 91. Moreover, the clinician who prepared petitioner's most recent psychological report noted that resumption of drug use was a serious risk factor in petitioner's case. Resp't Ex. 5 at 6-7 ("should [petitioner] choose to abuse [alcohol and/or drugs] again, his violence potential would be considered much higher than the average citizen in the community").

Additionally, there was ample evidence to support the factor of misconduct while incarcerated. Since being imprisoned, petitioner had received a total of about six CDC 115s. *Id.* at 39. The most recent was in May 2001, approximately three years before the parole hearing, for refusing to work in the Culinary department, which petitioner said was due to his having Hepatitis B. Resp't Ex. 5 at 6; Resp't Ex. 2 at 39-40, 86. The other CDC 115s were for using drugs in 1997, fighting in 1994, threats in 1992, threatening an inmate in 1990, and again for refusing to work in 1989. Resp't Ex. 5 at 6. Petitioner's most recent counselor's report stated that "[a]lthough [petitioner] made some positive steps . . . [he] continues to receive disciplinary actions." Resp't Ex. 4 at 2.

In sum, because "some evidence" supports one or more of the unsuitability factors relied upon by the Board in denying petitioner parole, and because that evidence also constitutes "some evidence" to support the conclusion that petitioner would be a danger to society if paroled, the court cannot say that the state courts' finding to that effect constituted "an unreasonable application of the 'some evidence' principle." *Irons*, 505 F.3d at 851. Petitioner is not entitled to federal habeas relief on this claim.

///

///

### 2. "Biggs Claim"

In a line of relatively recent cases, the Ninth Circuit has discussed the

8

constitutionality of denying parole when the only basis for denial is the circumstances of the offense. *See Irons*, 505 F.3d at 852-54; *Sass*, 461 F.3d at 1129; *Biggs*, 334 F.3d at 915-17.

In *Biggs*, the court held that "continued reliance in the future on an unchanging factor, the circumstance of the offense and the conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." 334 F.3d at 917. Because the court provided no legal rationale for this statement, it was unclear whether the court was suggesting that the continued denial of parole would be a new sort of due process violation, or that with the passage of time the nature of the offense could cease to be "some evidence" that the prisoner would be a danger if paroled. This ambiguity was helpfully cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different from a "*Biggs* claim." *Irons*, 505 F.3d at 853-54. It appears, putting together the brief discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole based on long-ago and unchangeable factors, when overwhelmed with positive evidence of rehabilitation, would violate due process. It thus may be that the Ninth Circuit has recognized a due process right which for convenience will be referred to in this opinion as a "*Biggs* claim."

Here, petitioner makes such a "*Biggs* claim" in contending that the Board's using the circumstances of his offense as grounds for denying parole at his second parole hearing violated due process. Petitioner has failed to establish the predicate for a *Biggs* claim. For one thing, a second denial of parole based on the circumstances of the crime does not amount to the repeated denials which the *Biggs* court suggested might violate due process. For another, petitioner's parole was not denied solely because of the circumstances of his offense, but also because of the factors described earlier, including the triviality of petitioner's motive in relation to the offense, petitioner's insufficient participation in substance abuse programs, and his misconduct while incarcerated. The state courts' rejection of petitioner's "Biggs claim" therefore was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority. *See* 28 U.S.C. § 2254(d).

9

### 3. "Uniform Terms"

Petitioner appears to argue that his due process rights were violated because the Board failed to set a fixed date for parole release pursuant to the principle of "uniform terms" for crimes of similar gravity. This claim is meritless because it requires an interpretation of state law, and this court is bound by the state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). In any event, the California Supreme Court has held that the parole board "may decline to [set a fixed release date] in an individual case if it concludes, on relevant grounds with support in the evidence, that the grant of a parole date is premature for reasons of public safety." *Dannenberg*, 34 Cal. 4th at 1071. As described earlier, sufficient evidence supported the Board's decision that petitioner would pose an unreasonable risk to public safety if released from prison. Petitioner is not entitled to federal habeas relief on this claim.

### 4. Biased Board

Petitioner contends that his due process rights were violated because the Board was biased. The record shows that the Board reviewed the evidence extensively and discussed it with petitioner and his attorney. Resp't Ex. 2 at 1-82. The Board's decision explains the facts it relied upon in finding him unsuitable for parole. *Id.* at 83-93. Both these factors tend to negate the accusation of bias. Additionally, petitioner has not provided any evidence to show that the Board's decision to deny him parole was based on its alleged bias rather than on the numerous factors and evidence the Board discussed in its opinion. The state courts' rejection of petitioner's bias claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority. *See* 28 U.S.C. § 2254(d).

///

///

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: July 29, 2008.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\VANHOOK345.RUL.wpd